# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| RAIDER MARKETING, LP, EXCO RESOURCES, INC., EXCO OPERATING COMPANY, LP, AND EXCO LAND COMPANY, LLC,<br><br>PLAINTIFFS,<br><br>V.<br><br>CHESAPEAKE ENERGY MARKETING, LLC and CHESAPEAKE ENERGY CORPORATION,<br><br>DEFENDANTS. | CIVIL ACTION NO. 3:17-CV-1516-N |

## CHESAPEAKE ENERGY CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**TABLE OF CONTENTS**

I. PROCEDURAL BACKGROUND ...................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................................1

    A.    Summary of Plaintiffs' Claims ................................................................................. 1

    B.    Plaintiffs' Allegations Concerning CEC's Contacts with Texas ............................. 3

    C.    CEC's Lack of Contacts with the State of Texas ..................................................... 4

III. ARGUMENT & AUTHORITIES ..................................................................................................5

    A.    The Court Lacks General Jurisdiction over CEC ..................................................... 7

    B.    The Court Lacks Specific Jurisdiction over CEC ..................................................... 8

        1.    CEC has not purposefully directed minimum contacts towards Texas ................................................................................................................... 9

        2.    There is no nexus between CEC's alleged contacts and Plaintiffs' claims ................................................................................................................. 10

        3.    Plaintiffs' "agency" allegations do not impute contacts to CEC ............... 11

IV. PRAYER.......................................................................................................................................13

## TABLE OF AUTHORITIES

### CASES

*Alpine View Co. Ltd. v. Atlas Copco AB,*
  205 F.3d 208 (5th Cir. 2000) ............................................................................................... 6
*BNSF Ry. Co. v. Tyrrell,*
  137 S. Ct. 1549 (2017) ..................................................................................................... 6, 7
*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,*
  137 S. Ct. 1773 (2017) ..................................................................................................... 6, 9
*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 472-74 (1985) ................................................................................................ 5
*Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.,*
  260 S.W.3d 67 (Tex.App.—Houston [1st Dist.] 2008, no pet.) ......................................... 11
*Daimler AG v. Bauman,*
  134 S. Ct. 746 (2014) ............................................................................................... 5, 6, 7, 8
*Duru v. TSMPG Kaiser Permanente Georgia,*
  2015 WL 3403946 at *3 (N.D.Tex. May 26, 2015) ............................................................ 7
*Freudensprung v. Offshore Technical Services, Inc.,*
  379 F.3d 327 (5th Cir. 2004) ............................................................................................. 10
*Gaines v. Kelly,*
  235 S.W.3d 179 (Tex. 2007) ............................................................................................. 12
*Gardemal v. Westin Hotel Co.,*
  186 F.3d 588 (5th Cir. 1999) ............................................................................................. 12
*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U.S. 915 (2011) ................................................................................................... 7, 8, 9
*Holt Oil & Gas Corp. v. Harvey,*
  801 F.2d 773 at 778 (5th Cir. 1986) .................................................................................. 10
*In re ADM Investor Services, Inc.,*
  304 S.W.3d 371 (Tex. 2010) ............................................................................................. 11
*International Shoe Co. v. Washington,*
  326 U.S. 310, 66 S. Ct. 154 (1945) ..................................................................................... 6
*Johnston v. Multidata Sys. Int'l Corp.,*
  523 F.3d 602 (5th Cir. 2008) ............................................................................................... 5
*Lucas v. Texas Indus., Inc.,*
  696 S.W.2d 372 (Tex. 1984) ............................................................................................. 12
*Luv N' Care, Ltd. v. Insta-Mix, Inc.,*
  438 F.3d 465 (5th Cir. 2006) ............................................................................................... 6
*Monkton Ins. Servs., Ltd. v. Ritter,*
  768 F.3d 429 (5th Cir. 2014) ...................................................................................... 6, 7, 9
*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
  253 F.3d 865 (5th Cir. 2001) ............................................................................................... 7
*Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.,*
  336 S.W.3d 764 (Tex.App.—Houston [1st Dist.] 2011, no pet.) ................................. 11, 12
*Searcy v. Parex Res., Inc.,*
  496 S.W.3d 58 (Tex. 2016) ................................................................................................. 5

*Stuart v. Spademan,*
  772 F.2d 1185 (5th Cir. 1985) .................................................................................... 10
*Suzion Energy Ltd. v. Trinity Structural Towers, Inc.,*
  436 S.W.3d 835 (Tex.App.—Dallas 2014, no pet.) ............................................ 11, 12
*U.S. v. Jon-T Chemicals, Inc.,*
  768 F.2d 686 (5th Cir. 1985) .................................................................................... 12
*Walden v. Fiore,*
  134 S. Ct. 1115 (2014) .................................................................................... 6, 8, 10

## RULES AND REGULATIONS

Fed. R. Civ. P. 12(b)(2) ........................................................................................................ 1

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Chesapeake Energy Corporation ("CEC"), files this Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and in support thereof respectfully states as follows:

## I.

## PROCEDURAL BACKGROUND

Plaintiffs Raider Marketing, L.P. ("Raider"), EXCO Resources, Inc. ("EXCO Resources"), EXCO Operating Company, L.P. ("EXCO Operating") and EXCO Land Company, LLC ("EXCO Land," and together with Raider, EXCO Resources, and EXCO Operating, "Plaintiffs") filed this lawsuit against Chesapeake Energy Marketing, LLC ("CEM") on June 6, 2017, in Dallas County District Court. CEM removed this lawsuit to this Court, and on August 1, 2017, Plaintiff's filed their Amended Complaint ("Complaint") naming CEC as an additional defendant. [Dkt 16] CEC was served with process in this suit on August 25, 2017. For the reasons detailed below, CEC is not subject to personal jurisdiction in this forum, and therefore filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## II.

## FACTUAL BACKGROUND

A. **Summary of Plaintiffs' Claims**

Plaintiffs have alleged breach of contract, declaratory judgment, and tortious interference claims against CEC and CEM (collectively, "Defendants") centered around a September 1, 2009, Base Contract for Sale and Purchase of Natural Gas ("Base Contract") between EXCO Operating

and CEM.[1] The Base Contract, as its name implies, outlines terms for the sale and purchase of natural gas. The specific details of such sales and purchases, including delivery and sale points for gas, are set forth in transaction confirmations executed from time to time by the parties to the Base Contract. In July of 2013, CEM and EXCO Operating executed a Transaction Confirmation No. 7 ("Confirmation No. 7") to the Base Contract detailing terms for gas purchases from 2013 through 2032.[2]

In or about May 24, 2017, CEM refused to consent to the assignment of the Base Contract from EXCO Operating to a third party known as VOG Palo Verde LP ("VOG")—an entity that Plaintiffs allege had agreed to a transaction (the "VOG Transaction") by which it would purchase certain mineral properties owned by EXCO Operating, EXCO Land, and EXCO Resources. Subsequently, on May 31, 2017, CEM terminated Confirmation No. 7—terminating all future sales and purchases to be made under same. Plaintiffs allege that the refusal to consent to the Base Contract's assignment, along with the termination of Confirmation No. 7, are each breaches of the Base Contract. [Dkt. 16 pp. 15-17] Plaintiffs further allege that such breaches of the Base Contract constitute tortious interference (of existing contract, or alternatively, of prospective business relations) with the VOG Transaction—alleging that performance under the Base Contract and Confirmation No. 7 was an essential component of the VOG Transaction. [Dkt. 16, pp. 20-21] Thus, the conduct forming the basis of Plaintiffs' tortious interference claims is CEM's alleged breach of the Base Contract. [Dkt. 16, pp. 20-21

---

[1] A true and correct copy of the Base Contract is attached to the Complaint as Exhibit A. Plaintiffs allege that Exco Operating assigned its rights and obligations under the Base Contract to Raider, an entity affiliated with Exco Operating. [Dkt. 16, p. 6] Defendants dispute whether Raider, as alleged by Plaintiffs, is CEM's current counterparty to the Base Contract. That dispute, however, is not relevant to the merits of this motion.

[2] A true and correct copy of Confirmation No. 7 is attached to the Complaint as Exhibit B.

**CHESAPEAKE ENERGY CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION -- Page 2**
522221 000609 19849808.1

B.   **Plaintiffs' Allegations Concerning CEC's Contacts with Texas**

The factual and jurisdictional allegations contained in Plaintiffs' Complaint are virtually identical to those contained in Plaintiffs' Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction filed solely against CEM. [*See* Dkt. 1, Ex. A-2] The primary difference contained therein, is that Plaintiffs' new Complaint defines CEM and CEC collectively as "Chesapeake," and simply repeats the original allegations against "Chesapeake" without any effort to distinguish between CEM and CEC. [Dkt. 16, p. 1]

Plaintiffs' Complaint includes three general and conclusory allegations as to personal jurisdiction over the collective "Chesapeake." Plaintiffs allege this Court has personal jurisdiction over "Chesapeake because Chesapeake has extensive contacts in Texas and transacts extensive business in Texas such that it is essentially at home in Texas." [Dkt. 16, p. 4] Plaintiffs further allege that "Chesapeake also buys, sells, and markets natural gas in Texas, including the gas at issue in this case." [Dkt. 16, p. 4] Finally, Plaintiffs allege "this dispute arises out of Chesapeake's specific contacts with Texas and Plaintiffs…such that it should have reasonably anticipated being sued in Texas, and litigating in Texas will not offend traditional notions of fair play and substantial justice." [Dkt. 16, p. 4]

Plaintiffs' Complaint further alleges a series of actions taken by "Chesapeake" related to the transfer of the Base Contract and/or the termination of Confirmation No. 7. Such actions are as follows:

- Sending a letter to EXCO Operating regarding EXCO Operating's creditworthiness. [Dkt. 16, p. 7]
- Sending a letter to EXCO Operating regarding the proper counterparty to the Base Contract. [Dkt. 16, p. 9]
- Sending a letter to EXCO Operating terminating Confirmation No. 7. [Dkt. 16, p. 10]
- Sending a letter to EXCO Operating and Raider stating Confirmation No. 7 had been terminated. [Dkt. 16, p.10]

- Instructing Mockingbird (a gas gatherer) to close receipt points for gas from Raider. [Dkt. 16, p. 10]
- Calling Raider and leaving a voicemail. [Dkt. 16, p. 11]
- Sending Raider a proposed new transaction confirmation. [Dkt. 16, p. 12]
- Notifying VOG it did not consent to transfer of the Base Contract. [Dkt. 16, p. 12]

While CEC takes issue with the Complaint's cursory definition of "Chesapeake," the series of actions described in the complaint merely recite a series of communications regarding the Base Contract—a contract executed almost 8 years prior to the filing of this suit, governed by Oklahoma law, and to which CEM (not CEC) is a party.

Finally, though unclear as to whether aimed at jurisdiction or liability, Plaintiffs allege that CEM and CEC "purported to act for each other pursuant to agency agreements or pursuant to actual custom and practice" with respect to all of "Chesapeake's statements and actions" described in the Complaint. [Dkt. 16, p. 14]

**C.    CEC's Lack of Contacts with the State of Texas**

In support of its Motion to Dismiss, CEC submits the Affidavit of Douglas J. Nix ("Nix Aff.") attached to the Appendix in Support of CEC's Motion to Dismiss ("App.") as Exhibit A. CEC is a corporation incorporated and existing under the laws of Oklahoma. [Nix Aff., ¶ 3, App. p. 3] CEC's principle place of business is located at 6100 N. Western Avenue, Oklahoma City, Oklahoma. [Nix Aff., ¶ 3, App. p. 3] CEC has no offices in Texas, nor does it employ any personnel in Texas. [Nix Aff., ¶ 3, App. p. 3] CEC does not own or lease real property in Texas. [Nix Aff., ¶ 3, App. p. 3] CEC has not sought authority to do business in the state of Texas, does not maintain a registered agent in the state of Texas, and does not transact business in Texas. [Nix Aff., ¶ 3, App. p. 3] CEC does not buy, sell, or market natural gas in Texas. [Nix Aff., ¶ 4, App. p. 3] CEC has not bought, sold, or marketed natural gas pursuant to the Base Contract or

Confirmation No. 7. [Nix Aff., ¶ 4, App. p. 3] CEC is not a party or signatory to the Base Contract or Confirmation No. 7. [Nix Aff., ¶ 4, App. p. 3]

CEM is an Oklahoma limited liability company and its sole member is CEC. [Nix Aff., ¶ 5, App. p. 3] There is no express agency agreement between CEM and CEC, and CEM is not authorized to act on CEC's behalf with respect to the Base Contract or otherwise. [Nix Aff., ¶ 5, App. p. 3] Instead, CEM is merely a wholly-owned subsidiary of CEC. [Nix Aff., ¶ 5, App. p. 3] CEM is engaged in the business of gas marketing, purchasing natural gas from producers and marketing and selling such gas to third parties. [Nix Aff., ¶ 5, App. pp. 3-4] CEM engages in this business in multiple states, including Texas. [Nix Aff., ¶ 5] CEM is a party to the Base Contract, executed in September of 2009. [Nix Aff., ¶ 5, App. p. 4]

### III.

### <u>ARGUMENT & AUTHORITIES</u>

A party may assert personal jurisdiction over a nonresident defendant only if: (1) the defendant is subject to personal jurisdiction under the laws of the state in which the court sits; and (2) the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 472-74 (1985). As the Texas long arm statute provides for personal jurisdiction that extends to the limits of the United States Constitution, only federal due process concerns are at issue in this case. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016).

The United States Constitution permits a state to exert personal jurisdiction over a nonresident defendant only if the defendant has some minimum purposeful contacts with the state, such that the exercise of personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 134 S.Ct. 746,

754 (2014)(citation omitted). The primary focus of the personal jurisdiction inquiry is the defendant's relationship to the forum state. *Walden v. Fiore*, 134 S.Ct. 1115, 1121-23 (2014). While a variety of factors must be considered in this inquiry, the primary concern is the burden on the defendant. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1780 (2017).

Constitutional due process requirements may be met by establishing either general jurisdiction or specific jurisdiction over a defendant. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154 (1945). General jurisdiction over a foreign corporation is present when its contacts with the forum state are so continuous and systematic as to render the defendant essentially at home in the state. *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017); *Daimler*, 134 S.Ct. at 754. A corporate defendant is "at home" in the place of its incorporation and where it has its principal place of business. *Id.* Specific jurisdiction requires that the defendant not only have continuous and systematic contacts with the forum state, but also that such activities in the forum give rise to the liabilities sued on in the subject litigation. *International Shoe*, 326 U.S. at 317. Specific jurisdiction depends on a showing that the defendant's activities in the forum state relate to or gave rise to the underlying controversy. *Bristol-Myers*, 137 S.Ct. at 1780.

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that personal jurisdiction is proper. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citing *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)). A plaintiff may make such a case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). While a Court can accept uncontroverted allegations in the complaint as true, the Court does not give credit to conclusory

allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

A. **The Court Lacks General Jurisdiction over CEC**

Recent United States Supreme Court decisions have significantly limited a court's exercise of general jurisdiction over corporate defendants. It is no longer enough to show that a foreign corporation's in-forum contacts can be said to be in some way continuous and systematic. *Daimler*, 134 S.Ct. at 761. Instead, a foreign corporation is subject to general jurisdiction in a forum where the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The "paradigm" forums in which a corporation is "at home" are the corporation's place of incorporation and its principal place of business. *BNSF*, 137 S.Ct. at 1558. "It is, therefore, 'incredibly difficult' to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Duru v. TSMPG Kaiser Permanente Georgia*, 2015 WL 3403946 at *3 (N.D.Tex. May 26, 2015)(citing *Monkton*, 768 F.3d at 432).

Far from being "at home" in Texas, CEC has virtually no Texas contacts. As set forth above, CEC:

- Is incorporated in Oklahoma;
- Maintains offices and its principal place of business in Oklahoma;
- Has no offices in Texas;
- Has no employees in Texas;
- Neither leases or owns real property in Texas;
- Has not registered to do business in Texas;
- Has no agent for service of process in Texas; and
- Does not purchase, sell, or market natural gas in Texas.

**CHESAPEAKE ENERGY CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION -- Page 7**
522221 000609 19849808.1

In the wake of the recent authority discussed above, it is clear that CEC does not have contacts so continuous and systematic that Texas is it's home.

Further, while CEC's subsidiary CEM may engage in business in Texas, CEM's contacts with this forum cannot be imputed to CEC for the purpose of this analysis. Again in *Daimler*, the United States Supreme Court examined the "agency theory" of general jurisdiction that focuses on whether a subsidiary "performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." 134 S.Ct. at 758-59 (citation omitted). The *Daimler* Court held that subjecting foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate "would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*." *Id.* at 760.

CEC has virtually no contacts to Texas. CEM's contacts, whatever they may be, may not be imputed to CEC. Accordingly, it is abundantly clear that CEC is not subject to general personal jurisdiction in Texas.

**B.     The Court Lacks Specific Jurisdiction over CEC**

Specific jurisdiction, or the lack thereof, turns upon the interplay between a defendant's conduct, the forum state, and the litigation—or stated differently, the conduct giving rise to the litigation. *Walden*, 134 S.Ct. 1115, 1121 (2014). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state." *Id.* A defendant subjects itself to a specific jurisdiction based upon: (1) minimum contacts purposefully directed at the forum state; (2) a nexus between such contacts

and the plaintiff's claims; and (3) when the exercise of jurisdiction over the defendant is fair and reasonable."[3] *Monkton*, 768 F.3d at 433.

"[T]here must be 'an affiliation between the forum and the underlying controversy, principally, activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 137 S.Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919). The mere fact that a defendant's conduct affects plaintiffs with connections to the forum state does not give rise to specific jurisdiction. *Id.* at 1781-82.

### 1. CEC has not purposefully directed minimum contacts towards Texas

Aside from Plaintiffs' summary grouping of CEC and CEM together for purposes of virtually all of its allegations, Plaintiffs have not shown that CEC actually directed any contacts toward Texas. CEC is not a party, nor a signatory, to the Base Contract or Confirmation No. 7. CEC has no direct relationship with Plaintiffs, or the state of Texas for that matter. The communications identified in Plaintiffs' Complaint regarded the obligations or exercise of rights of *CEM* under the Base Contract, and accordingly were sent and received on *CEM's* behalf. For example, the May 31, 2017, termination notice was sent to EXCO Operating from Sarika Jewell, Vice President—Marketing, Chesapeake Energy Marketing, LLC, states CEM terminates Confirmation No. 7, and states that CEM will no longer recognize receipt of gas volumes from EXCO Operating.[4]

Further, the Fifth Circuit Court of Appeals "has repeatedly held that…engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to

---

[3] As set forth below, Plaintiffs cannot demonstrate that CEC purposefully directed contacts toward Texas, or that such alleged contacts have any nexus to their claims. CEC need not establish whether the exercise of jurisdiction over CEC would be fair or reasonable. *Monkton*, 768 F.3d at 433.
[4] A true and correct copy of such letter is attached as Exhibit J to Plaintiffs' Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction. [Dkt. 1, Exhibit A-2]

establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 at 778 (5th Cir. 1986); *Stuart v. Spademan*, 772 F.2d 1185, 1192-94 (5th Cir. 1985). As stated above, the series of actions described in the complaint merely recite a series of communications regarding performance of the Base Contract. Such conduct does not give rise to specific jurisdiction over CEC. Moreover, CEC is not even a party to the contract at issue in this suit. A simple series of communications regarding rights and obligations of the Base Contract cannot constitute the purposeful direction of contacts towards Texas by CEC—especially when CEC had no rights to exercise or obligations to perform. [5]

### 2. There is no nexus between CEC's alleged contacts and Plaintiffs' claims

Plaintiffs have alleged causes of action for breach of contract, tortious interference with contract (with the VOG Transaction), and alternatively, tortious interference with prospective business relations (also with the VOG Transaction). Importantly, the activity that allegedly interfered with the VOG Transaction was CEM's alleged breach of the Base Contract "with knowledge that doing so necessarily would cause the breach, hindrance, or substantial impairment of the [VOG Transaction]." [Dkt. 16, pp. 19-20] Thus, the "activity or occurrence" upon which each of Plaintiffs' claims are based is the alleged breach of the Base Contract.

Again, CEC is not a party to the Base Contract. Given that plain fact, even if CEC did purposefully direct contacts towards Texas (which it did not) there could be no nexus between such contacts and Plaintiffs' claims—CEC cannot breach the Base Contract. The only alleged

---

[5] Moreover, communications regarding the assignment of the Base Contract are plainly insufficient to confer jurisdiction as it was Plaintiffs who initiated the request for consent to assignment of the Base Contract to VOG. [Dkt. 16, p. 6] *Walden*, 134 S.Ct. at 1122 ("[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum state.")(citations omitted).

contacts CEC (through the Plaintiffs' grouped definition of "Chesapeake") has directed toward the state of Texas involve mere correspondence related to the Base Contract. These alleged contacts did not give rise or relate to the breach of the Base Contract—they simply communicated decisions CEM had made with respect to its rights under the Base Contract.[6]

### 3. Plaintiffs' "agency" allegations do not impute contacts to CEC

Plaintiffs baldly assert that CEM and CEC "purported to act for each other pursuant to agency agreements or pursuant to actual custom and practice" with respect to all alleged statements and actions set forth in the Complaint. This is neither true, nor is the allegation of agency applicable to the jurisdictional analysis in this case.

An agent can only bind a principal if the agent has actual or apparent authority to do so. *In re ADM Investor Services, Inc.*, 304 S.W.3d 371, 374 (Tex. 2010). "An agent's authority to act on behalf of a principal depends on words or conduct on behalf by the principal either to the agent (actual authority) or to a third party (apparent authority)." *Suzion Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 842 (Tex.App.—Dallas 2014, no pet.)(citing *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 783 (Tex.App.—Houston [1st Dist.] 2011, no pet.).

Texas courts do not presume an agency relationship. *Id.* (citing *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 83 (Tex.App.—Houston [1st Dist.] 2008, no pet.). In order for a court to exercise personal jurisdiction over a defendant based on a plaintiff's allegation of agency, it is the plaintiff's burden to prove agency. *Id.* Therefore, in order for this Court to exercise personal jurisdiction over CEC based on the actions of CEM, Plaintiffs must prove CEM undertook such actions as the agent of CEC. As set forth above, CEM

---

[6] The fact that such communications were sent to Texas is not evidence of purposefully directed contacts. The Base Contract requires that notices, such as a notice of termination, be sent to EXCO Operating's Dallas office. [Dkt. 16, Ex. A, p. 1]

is merely a subsidiary of CEC. CEC does not have an express agency agreement with CEM. CEC further has not authorized CEM to act on behalf of CEC with respect to the Base Contract or otherwise. Accordingly, Plaintiffs must establish that CEC's conduct led Plaintiffs to reasonably believe CEM had authority to act on behalf of CEC. *See Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007).

In support of their agency theory, Plaintiffs essentially allege that certain personnel perform functions for both CEM and CEC, and that communications concerning the Base Contract were sent from CEC email accounts or on CEC letterhead.[7] [Dkt. 16, p. 14] In *Suzion Energy*, the Dallas Court of Appeals of Texas considered whether a foreign parent company was subject to personal jurisdiction based on the actions of its subsidiary. 436 S.W.3d at 841-43. The plaintiff in that case argued an agency relationship existed between the parent and subsidiary, and established that: (1) the contract at issue was signed by employees of the parent; (2) employees of the parent attended multiple meetings with the plaintiff both prior to and after execution of the contract; and (3) that the owner and chairman of the parent personally attended a meeting in Texas concerning performance of the contract. *Id.* at 842. Even given these contacts (much more substantial than any alleged by Plaintiffs) the Court held the plaintiff had failed to prove an agency relationship. *Id.* at 843.

Absent from Plaintiffs' allegations are any facts establishing that Plaintiffs believed CEM was acting for or on behalf of CEC in any way. This underscores the inapplicability of Plaintiffs'

---

[7] Plaintiffs have pled only that CEC and CEM are agents for one another. Plaintiffs have not pled that CEM is the alter ego of CEC. Even if Plaintiffs' Complaint is construed to set forth an alter ego theory, Plaintiffs' allegations are wholly insufficient to support the same. *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593-94 (5th Cir. 1999). A finding of alter ego requires evidence of complete dominion of a parent over a subsidiary. *Id.* at 593 (citing *U.S. v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691 (5th Cir. 1985). "The control necessary…is not mere majority or complete stock control but such dominion of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal." *Id.* at 594. Moreover, an important consideration is whether a subsidiary is underfunded or undercapitalized, which is an indication such subsidiary is a conduit. *Id.* at 593 (citing *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984).

agency theory related to jurisdiction in this case. CEM is EXCO Operating's counterparty to the Base Contract and Confirmation No. 7. Plaintiffs' agency theory requires Plaintiffs to establish they reasonably believed that CEM had authority to act on CEC's behalf in terminating a contract to which CEC is not a party. The Base Contract was executed in 2009. Plaintiffs have neither expressed nor alleged confusion as to the identity of their Base Contract counterparty, nor a belief that CEM acted as CEC's agent in executing and performing under the Base Contract during the almost 8 years preceding this dispute. Plaintiffs cannot argue now (based upon letterhead) that they believe CEM took any action with respect to the Base Contract on behalf of CEC.

## IV.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Chesapeake Energy Marketing, L.L.C. respectfully prays that: (1) Plaintiffs take nothing by their suit; (2) all costs be taxed against Plaintiffs; and (3) Chesapeake Energy Marketing, L.L.C have such other and further relief to which it may be entitled.

Respectfully submitted,

 /s/ *Craig A. Haynes*
Craig Haynes
State Bar No. 09284020
craig.haynes@tklaw.com

Greg W. Curry
Texas Bar No. 05270300
greg.curry@tklaw.com

Rachelle Glazer
State Bar No. 09785900
rachelle.glazer@tklaw.com

THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX  75201
Telephone: 214.969.1700
Facsimile: 214.969.1751

Jennifer P. Henry
Texas Bar No. 15859500
jennifer.henry@tklaw.com

THOMPSON & KNIGHT LLP
801 Cherry Street, Suite 1600
Fort Worth, Texas 76102
Telephone:  (817) 347-1700
Fax:  (817) 347-1799

ATTORNEYS FOR DEFENDANTS
CHESAPEAKE ENERGY CORPORATION AND
CHESAPEAKE ENERGY MARKETING, L.L.C.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was filed electronically on September 15, 2017, and, in compliance with Local Civil Rule LR 5.1(d), a copy of this document has been served on counsel of record for Plaintiffs.

                                                */s/ Rachelle H. Glazer*
                                                Rachelle H. Glazer